IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES A. KONSAVICH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 06-34J |
| ) | |
| JO ANNE B. BARNHART, ) | JUDGE GIBSON |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER OF COURT**

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 9-12). The Court has jurisdiction of this matter pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the standards applicable under 42 U.S.C. § 405(g). For the reasons that follow, the Court will deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 9) and grant the Motion for Summary Judgment filed by the Commissioner of Social Security (Document No. 11).

James A. Konsavich ("Plaintiff") protectively filed for supplemental security income benefits under Title XVI of the Social Security Act on October 7, 2003, alleging disability since February 12, 1996, due to anxiety and depression.[1] R. p. 13. The claim was initially denied on April 30, 2004,

---

[1] At the hearing, the Plaintiff amended his alleged onset date to January 1, 2004. R. p. 288. The ALJ noted this amendment when he issued his decision. R. p. 13.

1

prompting the Plaintiff to file a timely request for a hearing on May 11, 2004. *Id.* A hearing was held in Johnstown, Pennsylvania, on March 22, 2005, before Administrative Law Judge William W. Berg ("ALJ"). R. p. 285. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 287-308. Joseph Bentivegna, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 308-313.

On April 5, 2005, the ALJ issued a decision which was unfavorable to the Plaintiff. R. pp. 13-21. The Appeals Council subsequently denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case.[2] R. pp. 5-7. The Plaintiff filed a complaint in this matter on February 23, 2006. Document No. 3. Jo Anne Barnhart, Commissioner of Social Security ("Commissioner"), filed an answer on April 25, 2006. Document No. 6. The Plaintiff and the Commissioner filed cross-motions for summary judgment on May 26, 2006, and June 26, 2006, respectively. Document Nos. 9 & 11.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

---

[2] Due to a legibility problem, the Court cannot determine the precise date of the Appeals Council's denial of the Plaintiff's request for review. R. p. 5. Nevertheless, it appears that the denial occurred during the month of January, 2006. *Id.*

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI) benefits, the Commissioner uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not

3

to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted; brackets in original).

In his decision, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since his amended onset date of January 1, 2004. R. p. 19. At the second step of the sequential evaluation process, the ALJ found the Plaintiff to be suffering from lumbar disc disease, a major depressive disorder, an anxiety disorder, a disruptive behavior disorder, a personality disorder, and a history of drug and alcohol abuse. R. p. 20. Although these impairments were deemed to be "severe" for purposes of 20 C.F.R. § 416.920(a)(4)(ii), the ALJ determined that they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* In accordance with 20 C.F.R. § 416.945, the ALJ made the following finding with respect to the Plaintiff's residual functional capacity:

> The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for work requiring lifting and carrying objects weighing more than 20 pounds, more than occasional stooping, kneeling, crouching, crawling or climbing of ramps and stairs, any balancing or climbing of ladders, ropes or scaffolds, exposure to dangerous machinery and unprotected heights, more than occasional interaction with coworkers or supervisors, any interaction with the general public, more than simple work-related decisions, frequent work place changes, the performance of other than simple, repetitive, routine, low stress job tasks, prolonged reading for content or comprehension, or mathematical calculations such as cashier or teller work[.]

4

*Id.* Moving on to the fourth step of the process, the ALJ concluded that the Plaintiff was unable to perform his past relevant work as a chainman. *Id.*

At the time of the ALJ's decision, the Plaintiff was thirty-seven years of age and had a high school education. *Id.* Based on the applicable residual functional capacity and vocational assessments, the ALJ determined that the Plaintiff could work as a baker's helper, building cleaner, kitchen helper or laundry sorter. *Id.* Mr. Bentivegna's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 311-313.

In support of his motion for summary judgment, the Plaintiff makes three distinct arguments. First, he contends that the ALJ erred in rejecting the nonexertional limitations found by his treating psychiatrist. Document No. 10 pp. 20-22. Second, he argues that the ALJ erred in rejecting the exertional limitations found by his treating orthopedic surgeon. *Id.* pp. 23-24. Third, he asserts that the ALJ failed to properly evaluate the effect that his sleep disorder had on his ability to engage in substantial gainful activity. The Court will proceed to address each argument in turn.

The Plaintiff's first argument concerns the ALJ's decision not to fully credit the opinion of Dr. Richard Cassone, the Plaintiff's treating psychiatrist. Document No. 10 pp. 20-22. On October 20, 2004, Dr. Cassone assigned the Plaintiff a Global Assessment of Functioning ("GAF") rating of 55, which is indicative of only moderate difficulties in social, occupational or school functioning. R. p. 277. Nevertheless, Dr. Cassone's functional assessment of the Plaintiff's nonexertional impairments was very restrictive. Although Dr. Cassone opined that the Plaintiff had a fair ability to function independently and maintain his personal appearance, he indicated that the Plaintiff had a poor (or nonexistent) ability to follow work rules, relate to co-workers, deal with the public, use judgment,

5

interact with supervisors, deal with work stresses, maintain attention and/or concentration, understand, remember and carry out simple, detailed or complex instructions, behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. R. pp. 278-279. This assessment report was virtually identical to a similar report made by Dr. Cassone on December 8, 2003. R. pp. 247-252.

The law governing an ALJ's treatment of the opinion of a treating physician has been clearly established. If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." 61 Fed. Reg. 34490, 34491. The ALJ must accord great weight to the reports of treating physicians, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medical evidence, he may reject that opinion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Whenever the ALJ's decision is not fully favorable to the claimant, the opinion of the ALJ "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 61 Fed. Reg. 34490, 34492.

In his decision, the ALJ declined to give Dr. Cassone's opinion as to the Plaintiff's limitations controlling weight. R. p. 18. The ALJ explained:

> As to the opinion of Dr. Cassone, it is initially noted that Dr. Cassone submitted no clinical or objective findings in support of his opinion, and the limitations set forth by Dr. Cassone appear to be based in large part, if not entirely, on the claimant's subjective allegations. Indeed, Dr. Cassone has consistently rated the claimant's Global Assessment of Functioning at 55, indicative or no more than moderate symptomatology and/or moderate impairment in social, occupational or school functioning. The Administrative Law Judge also finds it noteworthy that the claimant has not required inpatient hospital confinement for his condition at any time since his amended onset date notwithstanding the degree of limitation suggested by Dr. Cassone.

*Id.* The reasons for the ALJ's decision not to give Dr. Cassone's opinion controlling weight were adequately explained.[3] Nonetheless, a determination that a treating physician's opinion is not entitled

---

[3] The Court does not agree with the Commissioner's contention that Dr. Cassone's opinion was not a medical opinion. Document No. 12 pp. 18-19. 20 C.F.R. § 416.927(a)(2) states that "[m]edical opinions are statements from physicians and psychologists or other acceptable sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 416.927(e)(3) states that the Social Security Administration "will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (e)(1) and (e)(2)" of those sections. The issues reserved to the Commissioner include the ultimate question of a claimant's disability, the question of whether the claimant's impairments meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, the determination of the claimant's residual functional capacity, and the application of vocational factors in the claimant's case. 20 C.F.R. § 416.927(e)(1)-(2). The term "residual functional capacity" is defined as "the most that [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). A tension exists between the definition of a "medical opinion," which includes what a claimant "can still do despite [his or her] impairments," and the reservation of the residual functional capacity determination to the Commissioner. 20 C.F.R. §§ 416.927(a)(2), 416.927(e)(2). The Court resolves this tension by focusing on the distinction between impairments and limitations. While a "medical opinion" accounts for what a claimant can do despite his or her *impairments*, a claimant's "residual functional capacity" is based on the most that a claimant can do despite his or her *limitations*. 20 C.F.R. §§ 416.927(a)(2), 416.945(a)(1); *Oderbert v. Commissioner of Social Security*, 413 F.Supp.2d 800, 803 (E.D.Tex. 2005); *Pearson v. Barnhart*, 380 F.Supp.2d 496, 505 (D.N.J. 2005)("Residual functional capacity is defined as that which an individual is still able to do despite the *limitations* caused by his or her *impairments*.")(emphasis added). Since Dr. Cassone's opinion expressed specific *limitations* caused by *impairments*, it was a "medical opinion." The cumulative effect of a claimant's *limitations* is what is reserved to the Commissioner and, therefore, not the proper subject of a "medical

7

to "controlling weight" does not end the inquiry. Where an ALJ opts to reject the opinion of a treating physician, he must identify the conflicting evidence in the record which supports his decision, and explain how conflicts in the evidence were reconciled. *Fargnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001). In the instant case, the Court is convinced that the ALJ satisfied this obligation.

In rejecting the nonexertional limitations found by Dr. Cassone, the ALJ relied on countervailing medical evidence. On April 6, 2004, the Plaintiff was examined by Dr. Steven Pacella at the request of a disability claims adjudicator. R. p. 253. Dr. Pacella believed that some of the Plaintiff's symptoms were more attributable to his use of mind-altering substances than to any formal thought disorder.[4] R. p. 255. Dr. Pacella opined that the Plaintiff would be capable of substantial gainful activity as long as he was properly motivated, avoided abusing substances, and was not otherwise precluded from working because of exertional impairments. R. p. 256. With respect to specific nonexertional limitations, Dr. Pacella reported that the Plaintiff was not limited in his ability to understand, remember and carry out short, simple instructions, and that he was only slightly limited in his ability to understand, remember and carry out detailed instructions. R. p. 257. The Plaintiff's ability to make judgments on simple work-related decisions was similarly found to be only slightly limited. *Id.* Furthermore, the Plaintiff's ability to interact appropriately with the public, supervisors and co-workers was found to be only

opinion."

---

[4] The Court notes that, under 42 U.S.C. § 423(d)(2)(C), a claimant is not considered to be "disabled" under the Social Security Act if alcoholism or drug addiction is a "contributing factor material to the Commissioner's determination that the individual is disabled." Nevertheless, the ALJ did not base his determination on this statutory provision, and the Court cannot substitute its own rationale for that of the ALJ. *Fargnoli v. Massanari*, 247 F.3d 34, 43-44, n. 7 (3d Cir. 2001). Therefore, the Court does not rely on 42 U.S.C. § 423(d)(2)(C) as a basis for affirming the decision of the Commissioner in this case.

moderately limited.[5] The ALJ expressly relied on Dr. Pacella's report, thereby explaining his basis for rejecting Dr. Cassone's opinion. R. p. 17.

The ALJ also relied on the opinion of Dr. Richard A. Heil, a state agency medical consultant who reviewed the evidence contained in the record. R. p. 18. On April 22, 2004, Dr. Heil reported that the Plaintiff had a mild restriction in his activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. R. p. 269. On a mental residual functional capacity assessment form listing several different mental tasks, Dr. Heil opined that the Plaintiff had some moderate limitations but no marked limitations. R. pp. 272-273. Dr. Heil elaborated on the Plaintiff's mental abilities in a written report:

> The claimant can understand, retain, and follow simple job instructions, i.e., perform one and two step tasks. He can make simple decisions. He could be expected to complete a normal workday without exacerbation of psychological symptoms. Although the claimant has a history of distractive behavior and difficulty interacting with supervisors and general public [sic], the claimant is able to get along with others in the workplace. He is able to maintain socially appropriate behavior. Moreover, he is self-sufficient in his activities of daily living. He can exercise appropriate judgment in the workplace. The limitations resulting from the impairment do not preclude the claimant from performing the basic mental demands of work on a sustained basis.

R. p. 274. Dr. Heil adopted the assessment of Dr. Pacella, finding Dr. Cassone's assessment to be an overestimation of the severity of the Plaintiff's functional limitations. *Id.*

In *Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991), the U.S. Court of Appeals for the Third

---

[5] Dr. Pacella's determinations regarding the Plaintiff's ability to respond appropriately to work pressures and changes in usual and routine work settings are not clearly expressed. R. p. 257. The marks appear between the "moderate" and "marked" categories, making Dr. Pacella's intention difficult to ascertain.

9

Circuit recognized that an ALJ may reject "internally contradictory evidence" from a treating source when that evidence is contradicted by nonexamining sources. *Jones*, 954 F.2d at 129. In this case, the ALJ relied on the reports of both an examining physician and a nonexamining physician to reject the opinion of Dr. Cassone. Furthermore, given Dr. Cassone's GAF rating of 55 on the date of his report regarding the Plaintiff's nonexertional limitations, Dr. Cassone's findings were "internally contradictory." Under these circumstances, the decision of the Commissioner is "supported by substantial evidence" for purposes of 42 U.S.C. § 405(g).

In his second argument, the Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. William Go, his orthopedic surgeon. Document No. 10 pp. 23-24. Apparently, Dr. Go last examined the Plaintiff on September 19, 2002. R. p. 2. On that occasion, Dr. Go completed an assessment form describing the Plaintiff's exertional limitations. R. pp. 122-123. According to Dr. Go, the Plaintiff was capable of frequently lifting or carrying objects weighing up to twenty pounds and occasionally lifting objects weighing up to twenty-five pounds. R. p. 122. Dr. Go further reported that the Plaintiff could stand or walk for only one to two hours and sit for only three hours in an eight-hour workday. *Id.* Although the Plaintiff's pushing and pulling abilities were found to be unlimited, Dr. Go determined that he was limited to only occasional bending, kneeling, stooping, crouching, balancing or climbing. R. pp. 122-123. It was also noted that the Plaintiff needed to avoid moving machinery. R. p. 123. The reason given by Dr. Go as an explanation for the reported limitations was "back pain." *Id.*

The Plaintiff focuses his argument on Dr. Go's finding that he could only stand or walk for two hours, and sit for three hours, in an eight-hour workday. Document No. 10 p. 23. The ALJ explained his basis for rejecting Dr. Go's opinion:

> As to the opinion of Dr. Go, it is initially noted that Dr. Go's limitations were based on the claimant's allegations of back pain; however, diagnostic studies of the lumbar spine have revealed no evidence of frank disc herniation, spinal stenosis, arachnoiditis, or nerve root impingement. Moreover, there is no evidence on physical examination of any muscle atrophy, paravertebral muscle spasm, a motor or sensory loss, reflex abnormality, reduced range of motion of the spine or extremities, or a gait disturbance. Finally, the Administrative Law Judge also notes that the claimant has not required aggressive medical treatment or surgical intervention due to a vertebrogenic disorder of the lumbar spine.

R. p. 18. The U.S. Court of Appeals for the Third Circuit has recognized that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). For this reason, the ALJ was not bound by Dr. Go's assessment. In addition, the ALJ evidently believed that Dr. Go was relying too heavily on the Plaintiff's own complaints rather than on an independent evaluation. At the hearing, the Plaintiff testified that Dr. Go (or someone else at the "pain clinic") had told him that his pain was in his "head," and that he was not seeking further treatment for his back condition. R. pp. 305-308. Given this admission, as well as the fact that the Plaintiff's focus was on his nonexertional impairments rather than on his exertional impairments, it was not unreasonable for the ALJ to reject the opinion of Dr. Go. Accordingly, the Court will not disturb the ALJ's determination.[6] It is worthy of note that the ALJ's residual functional capacity assessment, for the most part, incorporated the exertional limitations

---

[6] The Court acknowledges the Commissioner's argument that Dr. Go's opinion was rendered sixteen months before the Plaintiff's amended onset date, thereby decreasing its relevance to the ultimate determination of disability as of January 1, 2004. Document No. 12 pp. 19-20. As noted earlier, however, the Court must review the decision of the ALJ on the basis adopted by him. *Fargnoli*, 247 F.3d at 43-44, n. 7. Since the ALJ did not base his rejection of Dr. Go's opinion on the lapse of time identified by the Commissioner, the Court places no reliance on the timing of Dr. Go's opinion. It suffices to say that Dr. Go's opinion, as ascertained by the ALJ, reflected the Plaintiff's subjective complaints rather than the results of credible medical examination findings.

11

identified by Dr. Go, with the exceptions of the standing, walking and sitting limitations. R. pp. 20.

In his third and final argument, the Plaintiff argues that the ALJ failed to evaluate his "sleep disorder." Document No. 10 pp. 24-25. As the Commissioner points out, however, the record contains no evidence that the Plaintiff was ever diagnosed with a sleep disorder. It is true that the Plaintiff testified about his sleeping difficulties at the hearing. R. pp. 301-303. Nevertheless, the Plaintiff appears to confuse *symptoms* and *impairments*. The ALJ's mere failure to identify the Plaintiff's sleeping problems as a "sleep disorder," without more, cannot be a basis for remanding the case. *Santiago v. Barnhart*, 367 F.Supp.2d 728, 734 (E.D.Pa. 2005). A close examination of the ALJ's opinion reveals that he considered, and rejected, the Plaintiff's testimony regarding his need to sleep excessively. R. pp. 16-17. The Plaintiff cannot avoid the consequences of this determination solely by attempting to characterize his sleeping difficulties differently than the ALJ did in his opinion.

In summary, the ALJ properly factored all of the Plaintiff's exertional and nonexertional impairments into his residual functional capacity assessment. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). The ALJ was not required to accept all of the limitations *alleged* by the Plaintiff. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Instead, he was only required to accept those limitations which he found to be *credibly established* by the record. *Id.* The Court emphasizes that the Commissioner's decision, "if supported by substantial evidence," cannot be set aside even if the Court would have decided the factual inquiry differently. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

Accordingly, the Court must deny the Motion for Summary Judgment filed by the Plaintiff

(Document No. 9) and grant the Motion for Summary Judgment filed by the Commissioner (Document No. 11). An appropriate order follows.

**AND NOW**, this 20th day of February, 2007, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 9) is DENIED; and 2) the Defendant's Motion for Summary Judgment (Document No. 11) is GRANTED.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc: John D. Gibson, Esq.
John J. Valkovci, Jr., AUSA